UNITED STATES of America

v.

**Bernard GABRIEL, Appellant.**

No. 08–2926.

United States Court of Appeals, Third Circuit.

Submitted Pursuant to Third Circuit L.A.R. 34.1(a) May 3, 2010.

Filed: May 13, 2010.

Delia L. Smith, Esq., Office of United States Attorney, Charlotte Amalie, St. Thomas USVI, for Appellee.

Claudette V. Ferron, Esq., Charlotte Amalie, St. Thomas USVI, for Appellant.

Before: SMITH, CHAGARES, and JORDAN, Circuit Judges.

## OPINION

SMITH, Circuit Judge.

Bernard Gabriel was a baggage handler for Worldwide Flight Services at the Cyril E. King Airport on St. Thomas. He was charged in two counts of an 11–count superseding indictment for his involvement in a cocaine smuggling operation at the airport. Because we write only for the parties, we assume familiarity with that operation. Count One of the indictment charged Gabriel with conspiring to possess

with intent to distribute five kilograms or more of cocaine, from a "time unknown and continuing to September[ ] 2004." Count Eleven charged that on March 10, 2004, Gabriel aided and abetted the possession with intent to distribute of 500 grams or more of cocaine. Gabriel was convicted on both counts and now appeals.[1] We will affirm.

First, Gabriel challenges the sufficiency of the evidence to support his conviction on Count One. "When the sufficiency of the evidence to support a jury's verdict is challenged, we must view the evidence in the light most favorable to the government and must sustain the jury's verdict if a reasonable jury believing the government's evidence could find beyond a reasonable doubt that the government proved all the elements of the offense." *United States v. Syme*, 276 F.3d 131, 156 (3d Cir.2002) (internal quotations omitted). In deciding whether a conviction rests on sufficient evidence, we draw "all available inferences in favor of the government." *United States v. Riddick*, 156 F.3d 505, 509 (3d Cir.1998). "We do not weigh evidence or determine the credibility of witnesses in making this determination." *United States v. Beckett*, 208 F.3d 140, 151 (3d Cir.2000).

█ Under this standard of review, we must sustain Gabriel's conviction on Count One. Brent Donovan, who like Gabriel was a baggage handler at the airport, testified that Gabriel paid him to remove intact flight tags from checked luggage on three occasions in November and December of 2002.[2] According to Donovan, Gabriel paid him amounts ranging from $500 to $4,000 for his efforts. This evidence alone was sufficient to sustain the conviction, but

there was more. Donovan also testified that on certain occasions, Gabriel acted as a lookout while he removed flight tags from luggage in the bag room. Furthermore, there was evidence that Gabriel admitted as much to Agent Darnell Blake just after his arrest. Agent Blake testified that Gabriel blurted out to officers: "I have done it, acted as a lookout." A reasonable jury could have concluded from this evidence that the government proved beyond a reasonable doubt the elements of the drug smuggling conspiracy charged in Count One.

█ Likewise, there is sufficient evidence to sustain Gabriel's conviction on Count Eleven. Meleek Sylvester testified that on March 9, 2004, Alric Thomas paid him $4,000 and gave him two kilograms of cocaine. Sylvester was to bring the cocaine to the airport the next day and, with help from Robert Rawlins, ensure that it made it onto Flight 1902 to Newark. Rawlins backed out, however, leaving Sylvester to load the cocaine into a suitcase by himself. He did so in the bag room, while Gabriel and Robert Rawlins were present. Sylvester told them that he was loading two kilograms of cocaine into a suitcase. Both Rawlins and Gabriel told him, "go ahead. Do your thing." The District Court reasoned that a reasonable jury could have found from this evidence that Gabriel was acting as a lookout for Sylvester. We agree, especially in light of Donovan's testimony that baggage handlers involved in the conspiracy often acted as lookouts for each other while coconspirators carried out their work in the bag room. For example, Donovan testified that he had served as a lookout for Mervin

---

1. The District Court had jurisdiction under 18 U.S.C. § 3231 and 48 U.S.C. § 1612(a). We exercise appellate jurisdiction under 28 U.S.C. § 1291.

2. Those tags would then be transferred to cocaine-filled suitcases supplied by other members of the conspiracy.

Dorival, and that Dorival, Gabriel, and Robert Rawlins had all acted as lookouts for him. Under these circumstances, a reasonable jury could have found Gabriel guilty of aiding and abetting cocaine possession, as charged in Count Eleven.

■ Gabriel next claims that there was a prejudicial variance between the indictment and the trial evidence. Count One of the indictment charged a single conspiracy. The District Court concluded, and the government conceded, that the trial evidence established two conspiracies. One involved Clyde Edinborough, Danny Rawlins, Dorival, and Dorival's crew of baggage handlers. The other involved Thomas, Sylvester, Dorival, and other baggage handlers. Gabriel correctly points out that this discrepancy created a variance. *See United States v. Perez*, 280 F.3d 318, 345 (3d Cir.2002) (noting that "[w]here a single conspiracy is alleged in the indictment, there is a variance if the evidence at trial proves only the existence of multiple conspiracies"). Near the end of the trial, the District Court cured this variance by dismissing Count One as to Edinborough. Gabriel claims that this was inadequate. He points out that the Court's remedy "did not remove the evidence already admitted that established multiple conspiracies[.]" He argues that he was prejudiced by the "spillover" effect of the evidence related to the Edinborough conspiracy.

We are unpersuaded. Gabriel never explains how evidence of the Edinborough conspiracy "spilled over" or otherwise prejudiced him. In fact, he concedes that the government's evidence in no way tied him to Edinborough. That assertion is consistent with our review of the record, and it significantly weakens Gabriel's spillover claim. If none of the evidence concerning Edinborough's conspiracy implicated Gabriel, then it is difficult to see how Gabriel was prejudiced by it. Gabriel is left with the bare assertion that it was "impossible for the jury to separate the individuals charged and the offenses they were charged with." Gabriel offers no reason for us to believe this was the case, nor do we find any in the record. The District Court instructed the jury that it was to

> analyze the evidence in the case separately as to each defendant. Although you'll see [several] people listed as defendants, you'll have to look at it as United States of America versus whoever is in the first slot, as if nobody else existed; and then United States of America versus the next person, as if nobody else was a defendant in the case, in determining whether or not the government has ... made out its burden of proof.

We generally presume that juries follow their instructions, *Syme*, 276 F.3d at 155, and Gabriel offers no compelling reason to depart from that rule here.

■ Next, Gabriel argues that the District Court improperly admitted a tape-recorded conversation between himself and informant Danny Rawlins. At the request of investigating officers, Rawlins asked Gabriel if "anything could go now." Gabriel told him no, and that it was necessary to "lay off for a while." Rawlins testified that he understood this to mean that no drugs could be moved through the airport at that time. The District Court admitted the recording over Gabriel's objection because it concluded that the recording was an "admission of knowledge" of a drug smuggling conspiracy, and relevant because it showed "past involvement as well as intent or willingness to participate in future transactions." We review this ruling for abuse of discretion. *United States v. Johnson*, 388 F.3d 96, 100 (3d Cir.2004).

Gabriel's argument as to why the conversation should have been excluded cites

no Third Circuit authority and is difficult to follow. He seems to argue that because Danny Rawlins was an informant, his conversation with Gabriel could not have constituted a conspiratorial agreement, and was therefore irrelevant and inadmissible. We disagree. Danny Rawlins testified that he understood the conversation to mean that no drugs could be moved through the airport at that time. The jury could have concluded that Gabriel shared that understanding. As the District Court reasoned, the conversation arguably demonstrated Gabriel's knowledge of the drug smuggling conspiracy, and tended to prove that he was either already involved in that conspiracy or willing to participate in the future. Therefore, the Court's admission of the conversation was not an abuse of discretion.

■ Gabriel next claims that the trial judge was biased in favor of the government. He contends that the Court's intervention on behalf of the government was so aggressive and pervasive that the Court effectively became an advocate for the prosecution. "[I]n order to reverse on grounds of excessive judicial intervention, the record must either disclose actual bias on the part of the trial judge [or] leave the reviewing court with an abiding impression that the judge's remarks and questioning of witnesses projected to the jury an appearance of advocacy or partiality." *United States v. Wilensky*, 757 F.2d 594, 598 (3d Cir.1985) (quoting *Warner v. Transamerica Ins. Co.*, 739 F.2d 1347, 1351 (8th Cir.1984)). No "absolute, rigid rule exists" for determining when a trial judge oversteps his bounds and becomes an advocate for one party. *Riley v. Goodman*, 315 F.2d 232, 234 (3d Cir.1963). It is settled, however, that "the judge's participation must never reach the point where it appears clear to the jury that the court believes the accused is guilty." *United*

*States v. Beaty*, 722 F.2d 1090, 1093 (3d Cir.1983) (internal quotation marks omitted). We find no evidence that the District Judge crossed this line. The record shows that he was actively involved in the trial, but at no point was his involvement so pervasive or one-sided as to project partiality to either the prosecution or the defense.

Gabriel also alleges prosecutorial misconduct during the trial. In considering a claim of prosecutorial misconduct, our inquiry is whether the prosecutor's actions "so infected the trial with unfairness as to make the resulting conviction a denial of due process in light of the entire proceeding." *United States v. Morena*, 547 F.3d 191, 194 (3d Cir.2008) (internal quotation marks omitted). After carefully examining the record, we find no evidence of prosecutorial misconduct. Accordingly, Gabriel's request for relief on this basis will be denied.

We have considered the remainder of Gabriel's challenges to his conviction and find them to be without merit. We will affirm the judgment of conviction.